IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**RAYMOND KORNEGAY,**
            Plaintiff,

      v.                                                    Civil Action No. 5:24-CV-137
                                                                   Judge Bailey

**ASS. WARDEN LINTER,**
**MR. H. BERRYMAN** (Unit Manager**),**
**MS. A. WELLS** (Unit Case Manager**),**

            Defendants.

## REPORT AND RECOMMENDATION

### I. Background

The plaintiff initiated this action on July 19, 2024, by filing a Complaint asserting claims for violations of his constitutional rights pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). [Doc. 1]. He paid the initial partial filing fee on September 17, 2024. [Doc. 14]. The plaintiff is currently a federal prisoner incarcerated at Gilmer FCI, in Glenville, West Virginia, with a projected release date of June 11, 2026. (*See* Federal Bureau of Prisons Inmate Locator, www.bop.gov/inmateloc/). He claims that the Bureau of Prisons ("BOP") has wrongfully denied him earned time credits ("ETCs") under the First Step Act ("FSA"), and further, that he was retaliated against when he filed grievances through the BOP's Administrative Remedies Program ("ARP"). On October 11, 2024, plaintiff also filed a Motion for Miscellaneous Relief, alleging improprieties and retaliation on the part of the Trust Officer at FCI Gilmer regarding deductions from the plaintiff's prisoner trust account, that are being applied to pay the filing fee in this case. [Doc. 15]. This matter is assigned to the Honorable John Preston Bailey, United States District Judge, and it is referred to the

1

undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned recommends the case be dismissed.

## II. The Complaint

The Complaint alleges violations of the plaintiff's Eighth and Fourteenth Amendment rights. First, plaintiff alleges the "deprivation of a vested liberty interest under the Fourteenth Amendment" in that he has not received earned time credits under the FSA for classes and programming he says he has completed. [Doc. 1 at 7–8]. Second, the plaintiff claims that the defendants have violated his Eighth Amendment rights "by acts of retaliation" in response to his filing administrative grievances "against institutional staff members." [Id. at 8].[1] Specifically, he alleges that when he told unit staff that his rights had been violated, they "threated him with disciplinary action if he mentioned anything about a violation of his constitutional rights again." [Doc. 1 at 9]. He likewise alleges intentional delays and mishandling of some grievance forms and that he was denied access to administrative remedies. [Docs. 1 at 10, 1-1 at 1,10]. For relief, he asks that the defendant BOP employees "be removed from their official duties," that his "custody scoring be corrected" to reflect his participation in work and educational programming, and for defendants to pay damages in the amount of $25,000.00. [Id. at 11].

---

[1] While plaintiff's retaliation allegations are framed as an Eighth Amendment claim, to the extent he is alleging that he was impeded in accessing the Administrative Remedy Program, such a claim is properly construed as a First Amendment claim. See, for example, **Earle v. Shreves**, 990 F.3d 774 (4th Cir. 2021).

### III. Standard of Review

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious.  Pursuant to 28 U.S.C. § 1915A(b), a court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it is without arguable merit either in law or in fact.  **Neitzke v. Williams**, 490 U.S. 319, 325 (1989).  However, the court must read *pro se* allegations in a liberal fashion.  **Haines v. Kerner**, 404 U.S. 519, 520 (1972).   A complaint which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous.  **See Neitzke** at 328.  Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[2] or when the claims rely on factual allegations which are "clearly baseless."  **Denton v. Hernandez**, 504 U.S. 25, 32 (1992).  This includes claims in which the plaintiff has little or no chance of success.  See **Estelle v. Gamble**, 429 U.S. 97, 106 (1976).

The plaintiff is proceeding *pro se* and therefore the Court is required to liberally construe his pleadings.  **Estelle**, 429 U.S. at 106; **Haines v. Kerner**, 404 U.S. 519, 520–1 (1972) (per curiam); **Erikson v. Pardus**, 551 U.S. 89, 94 (2007); **Loe v. Armistead**, 582 F.2d 1291 (4th Cir. 1978); **Gordon v. Leeke**, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys,

---

[2] *Id.* at 327.

3

*Haines*, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal.

## IV. Analysis

**A. A petition for habeas corpus, rather than a *Bivens* action, is the proper method for the plaintiff to challenge the BOP's calculation of his earned time credits and the computation of his sentence.**

At the outset, the Court notes that since the plaintiff, in Count I, is challenging the BOP's calculation of his earned time credits, he is, in fact, challenging the manner in which his sentence is being executed and the duration of his confinement. The law is well settled in this respect, however, that a claim for credit against a sentence does not sound in *Bivens. See Preiser v. Rodriguez,* 411 U.S. 475, 498-500 (1973). Instead of a civil rights suit, the proper method for challenging the computation or execution of a federal sentence is through a petition for habeas corpus under § 2241. *Linsey v. Saad*, No. 1:18-CV-41, 2019 WL 4601514, at *2 (N.D. W.Va. Sept. 23, 2019).

Likewise, a claim for credit against a sentence, pursuant to the provisions of the First Step Act, also attacks the computation and execution of a prisoner's sentence, and accordingly must be brought as a § 2241 petition. *See White* v. *Warden, Federal Correctional Institution-Cumberland*, 2023 WL 4867562, at *6 (D. Md. July 31, 2023) (challenge to entitlement of ETCs under the First Step Act properly filed as a § 2241 petition) (internal citations omitted); *Ben v. Janson*, No. 6:23-CV-00466, 2023 WL 2603429, at *3 (D. S.C. Feb. 27, 2023), *report and recommendation adopted*, No. 6:23-CV-0046, 2023 WL 2601941 (D. S.C. March 22, 2023) ("Because the petitioner challenges the BOP's calculation of his credits for completing educational programming – due to the implementation of the FSA – this petition is properly brought as a § 2241

4

habeas petition.") (internal citations omitted); **Toussaint v. Knight**, 2021 WL 2635887, at *3 (D. S.C. June 4, 2021) *report and recommendation adopted*, 2021 WL 2635479 (D. S.C. June 25, 2021) (same); **Danmola v. Bureau of Prisons,** 2024 WL 2138326, at *3 (W.D. Ok. Jan. 31, 2024), *report and recommendation adopted,* 2024 WL 1638622 (W.D. Ok. April 16, 2024) (appropriate method of challenging the manner in which a sentence is executed, including the calculation of time credits under the First Step Act, is through a writ of habeas corpus pursuant to § 2241); **U.S. v. Croft,** 2023 WL 6457767, at *3 (D. S.C. October 4, 2023) (proper method for challenging computation or execution of a federal sentence, based on plaintiff's claimed inability to earn FSA time credits, is through a § 2241 habeas petition) (internal citations omitted).

The undersigned notes that since the time he initiated this civil rights action, the plaintiff has, in fact, filed a § 2241 petition in this Court, 5:24-CV-199, in which he is pursuing habeas relief for the claims alleged in Count I of this complaint regarding the computation of earned time credits. Accordingly, based on the foregoing, the undersigned finds that Count I of the complaint is subject to dismissal for failure to state a claim upon which relief can be granted.

### B. Plaintiff's retaliation claim, as alleged in Count II, is not cognizable under *Bivens*.

In **Bivens,** the Supreme Court first recognized an implied cause of action for money damages under the Fourth Amendment against federal agents who allegedly entered the plaintiff's home without a warrant, handcuffed him in front of his family, conducted a warrantless search, and threatened to arrest his entire family while arresting him for narcotics violations. **Bivens** at 389. In the decade following **Bivens**, the Court twice more

5

recognized implied causes of action for constitutional violations by federal officials. In *Davis v. Passman*, 442 U.S. 228 (1979), the Court held that the Due Process Clause of the Fifth Amendment provided a damages remedy for a former congressional staffer's sex-discrimination claim. In *Carlson v. Green*, 446 U.S. 14 (1980), the Court held that the Eighth Amendment provided a damages remedy for a federal prisoner's inadequate-care claim. Outside of these contexts, however, the Supreme Court has consistently refused to extend *Bivens* to any new context, and over the past 42 years, it has declined twelve (12) times to approve an implied damages remedy for other alleged constitutional violations. See *Mitchell v. Skinner*, 2023 WL 11264898, at *1 (N.D. W.Va. Feb. 27, 2023) (collecting authority).

Most recently, the Court refused to recognize a *Bivens*-type remedy in *Egbert v. Boule*, 596 U.S. 482 (2022). While not overruling *Bivens*, the *Egbert* decision nonetheless further restricted the implied cause of action, and as the Fourth Circuit declared, has "all but closed the door on *Bivens* remedies." *Dyer v. Smith*, 56 F.4th 271, 273 (4th Cir. Dec. 29, 2022). In *Egbert*, the Court emphasized once again that recognizing a *Bivens* cause of action is "a disfavored judicial activity." *Egbert* at 491 (citing *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) and *Hernández v. Mesa*, 589 U.S. 93, 101 (2020)). The Court also discussed the well-established two-step inquiry which courts are to use for determining whether a *Bivens* claim may proceed:

> First, we ask whether the case presents "a new *Bivens* context" - i.e., is it "meaningful[ly]" different from the three cases in which the Court has implied a damages action. Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are "special factors" indicating that the

6

> Judiciary is at least arguably less equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." If there is even a single "reason to pause before applying **Bivens** in a new context," a court may not recognize a **Bivens** remedy.

**Egbert** at 492 (internal citations omitted). See **Ziglar** at 122; **Hernández** at 102 (internal citations omitted).

This two-step test, however, was "significantly modified" by the **Egbert** court. **Mitchell** at *3. The Court explained that although its previous cases "describe two steps, these steps often revolve into a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." **Egbert** at 492. In this respect, "[e]ven a single sound reason to defer to Congress" is enough to require a court to refrain from creating such a remedy." **Id**. at 491–492. According to the Fourth Circuit, this "conflation of the two steps," means that "in **Egbert**,.. the Court recognized a substantial overlap between the factors relevant to the two steps, often leading to an analysis that addresses just the single question of whether there is any reason to think that Congress is better equipped to create a damages remedy." **Jean v. Smallwood**, 2022 WL 17969091, at *4 (W.D. Va. Dec. 27, 2022) (internal quotation marks omitted) (citing **Tate v. Harmon**, 54 F.4th 839, 848 (internal citations omitted).

As this Court has observed, however, in cases decided by the Fourth Circuit since **Egbert**, the Court has nonetheless continued to follow the "two-step new context test." **Mitchell,** at *4 (citing **Tate v. Harmon,** 54 F.4th 839 (4th Cir. 2022) and **Dyer v. Smith**, 56 F.4th 271 (4th Cir. 2022)). See also **Mays v. Smith**, 70 F.4th 198, 202 (4th Cir. June 6, 2022); **Bulger v. Hurwitz**, 64 F.4th 127, 138 (4th Cir. March 3, 2023). Accordingly,

7

this Court must determine whether the case now before it: (1) presents a new *Bivens* context, which is meaningfully different from the three cases in which the Supreme Court has implied a damages action; and (2) if the claim does arise in such a new context, whether there are any special factors that counsel hesitation about granting the extension of *Bivens*. *Bulger* at 137, *quoting Hernandez* at 102. Thus, the undersigned must first consider whether the plaintiff's case involves a "new context" for *Bivens* purposes.

> (1) The plaintiff's retaliation claim presents a new context for purposes of *Bivens*

Turning to the first step for determining whether plaintiff's Count II *Bivens* claim can proceed, the Court must decide whether the proffered cause of action presents a "new context" under *Bivens* in that it is "different in [any] meaningful way" from the three prior cases in which the Court has provided a *Bivens* remedy. *Ziglar* at 139; *Tun-Cos v. Perrotte*, 922 F.3d 514, 522–23 (4th Cir. 2019). Clearly, in this case, the plaintiff's claim that defendants have violated his First Amendment rights by retaliating against him for filing grievances is in no way similar to those of the Supreme Court's *Bivens* trilogy, and the "new context" inquiry is thus easily satisfied. Additionally, in this respect, the undersigned notes that both the Supreme Court and the Fourth Circuit have ruled that a prisoner's First Amendment retaliation claim presents a new *Bivens* context. See *Egbert* at 499 ("[T]here is no *Bivens* action for First Amendment retaliation."); *Dyer* at 278 (agreeing with district court that a First Amendment retaliation claim arose in a new context); *Earle v. Shreves*, at 779 (4th Cir. 2021) (an inmate's First Amendment retaliation claim presents a new *Bivens* context). This Court has likewise previously determined that a prisoner's First Amendment retaliation claim, where the plaintiff alleged he was being threatened for filing grievances, presented a new context under *Bivens*.

See *Milliron v. K. Brown,* 2021 WL 6062061, at *6 (N.D. W.Va. December 1, 2021). Accordingly, the undersigned finds that the plaintiff's retaliation claim is a new context for purposes of the two-step *Bivens* inquiry.

> (2) Special factors counselling hesitation preclude the extension of *Bivens* in this case

Having determined that this case presents a new context, the next inquiry for the Court is "whether there are any special factors that counsel hesitation about granting the extension of *Bivens*." *Tate* at 844 (citing *Hernandez* at 102). In this regard, the Supreme Court has further directed that the "special factors" inquiry must center on "separation-of-powers principles" and "requires that a court ask whether judicial intrusion into a given field is appropriate." *Bulger* at 137 (citing *Hernandez* at 94 and *Ziglar* at 135). While the Supreme Court has not provided a comprehensive list of special factors, lower courts are instructed to "consider the risk of interfering with the authority of other branches" and to determine "whether there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy," as well as "whether the Judiciary is well suited, absent congressional action, or instruction to consider and weigh the costs and benefits of allowing a damages action to proceed." *Tate* at 845 (citing *Hernandez* at 102); *Dyer* at 278–79 (quoting *Ziglar* at 136). If there is "reason to pause before applying *Bivens* in a new context or to a new class of defendants," the request to extend *Bivens* should be rejected. *Hernandez* at 102*.*

Courts must also look at whether there is an alternative remedial structure available in a case. *Ziglar* at 122. The Supreme Court has instructed that "a court may not fashion a *Bivens* remedy if Congress has already provided, or has authorized the Executive to provide, an 'alternative remedial structure.'" *Egbert* at 493 (internal citations omitted).

When there is an alternative remedial structure in place, that fact alone, "like any special factor, is reason enough to limit the power of the Judiciary to infer a new **Bivens** cause of action." *Id.* Furthermore, it is of no matter that the "existing remedies do not provide complete relief." *Id.* (internal citations omitted).

Notable, for purposes of the present inquiry, is the fact that the Supreme Court has ruled that **Bivens** relief is "unavailable" for federal prisoners who can, "among other options, file grievances through an Administrative Remedies Program" (ARP) to pursue their claims. *Id.* at 497 (*citing* **Correctional Services Corp. v. Malesko,** 534 U.S. 61, 74 (2001)). In this regard, the Supreme Court has long acknowledged that: "So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability." **Malesko** at 69 (internal citations omitted). Moreover, as this Court recently observed with respect to **Malesko**: "This holding alone would appear to bar any **Bivens** type action brought by a federal prisoner." **Mitchell** at *6.

The Fourth Circuit has also consistently ruled that "the existence of an alternative remedial structure for prisoners, even if it is not as effective as a suit for damages, weighs heavily against recognizing a new **Bivens** cause of action." **Nellson v. Doe**, 2023 WL 3336689, at *5 (4th Cir. 2023) (quoting **Bulger** at 140–141); *See also* **Tate** at 847–48; **Earle v. Shreves**, 990 F.3d 774,780 (4th Cir. 2021). Finally, this Court, as well, has found that the alternative remedies available to a federal prisoner "strongly caution against an expansion of **Bivens** into a new context." **Milliron** at *7; See also **Scates v. Craddock**, 2019 WL 6462846, at *8 (N.D. W.Va. July 26, 2019), *report and recommendation adopted,* 2019 WL 4200862 (N.D. W.Va. Sept. 5, 2019) ("[M]any courts

have explicitly recognized that the BOP's administrative remedy program is an alternative process that precludes a *Bivens* remedy.") (collecting authority).

In this case, the plaintiff's complaint confirms that alternative remedies were available to him, and that he could - and *did* - file grievances through the Bureau of Prisons' Administrative Remedy Program.  In this regard, the undersigned is mindful of the Fourth Circuit's recent decision in *Fields v. Federal Bureau of Prisons*, *et. al.*,109 F.4th 264 (4th Cir. 2024), where a divided panel of the Court extended *Bivens* to a new context, permitting a federal prisoner's Eighth Amendment excessive force claim to proceed against BOP officials. The *Fields* case, however, is clearly distinguishable from the present one.  The plaintiff in *Fields* claimed that following the alleged use of force incidents, he attempted to use the BOP's administrative remedy program, but that prison officials refused to provide him with the necessary forms and that he thus was not able to file any grievances regarding the facts of his complaint.[3]  Specifically, he alleged that the defendants had denied him "the right to seek redress via the USP-Lee grievance procedure." [Id. at 18, 21].

While acknowledging that in the past it had declined to extend *Bivens* to cases brought by federal prisoners, the Court explained that "it had done so on the theory that inmates have *access* to alternative remedies." *Id*. at 274 (emphasis added).  The Court found, however, that this reasoning "did not apply" to *Fields*, in that he "lacked access to

---

[3] Taken from plaintiff's civil docket available on PACER. See *Fields v. Federal Bureau of Prisons*, 7:22-CV-21-EKD-JCH (W.D. Va. Jan. 9, 2022, [Doc. 1 at 1]. *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F. 3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of public record); *Colonial Penn. Ins. Co. v. Coll*, 887 F.2d 1236 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.")

11

alternative remedies because prison officials deliberately thwarted his access to them." *Id.* Distinct from ***Bulger***, where the inmate died before he had a chance to file a formal grievance, the Court emphasized that "what is at issue here is not the ARP's adequacy, or whether Fields can obtain the remedy he seeks through the ARP. Rather the question is whether the ARP is operational, such that it can provide any remedy to any prisoner at all." *Id*. While the ARP thus had the "*capacity*" to provide relief to ***Fields***," he alleged that officers had "intentionally subverted" its *operation*, and that no alternative remedy was in fact available to him, and the Court accordingly held that "the *theoretical* existence of administrative remedies cannot bar his recourse to the judiciary to obtain a remedy." Id at 275. (emphasis added).

By contrast, the plaintiff in this case did, in fact, utilize the ARP to file grievances concerning the facts related to this Complaint. [Doc. 1 at 4]. He filed at least one "Request to Staff," which he characterized as his "formal request" to have earned time credits applied to his sentence. [Doc. 1-1 at 5]. He received a response, signed by the Warden, informing him that his request had been "evaluated" and denied because his PATTERN score was MEDIUM, he had been convicted of one or more institutional offenses, and his public safety factor rating was "Greatest Severity." [Doc. 1-1 at 9]. The Warden further advised plaintiff that if he was not satisfied with the response, he could "commence an appeal of this decision via the administrative remedy process" by filing a BP-9 within twenty (20) days. [Id.]. Plaintiff also filed grievances at the facility, regional and central office levels. [Doc. 1-1 at 2–4, 6–8, 11–13, 19–21]. His pleadings furthermore reflect that he received at least one response from the BOP regional office, and one from the Central Office. [Doc. 1-1 at 2, 11]. Thus, despite his general allegation he has "been constantly

12

denied access to any form of the administration remedies," [Id. at 10, 18], it is apparent that the ARP was not only available but was also used by this plaintiff.  Accordingly, the undersigned finds that the availability of alternative remedies to the plaintiff is a special factor counseling hesitation which in and of itself precludes the extension of **Bivens** in this case.  See **Egbert** at 493.

The undersigned further finds that while the existence of alternative remedies alone would be sufficient grounds to preclude the extension of **Bivens** in this case, there are nonetheless, other special factors counseling hesitation here.  In this regard, the Supreme Court has directed that other factors to be considered in the special factors analysis include "'economic and governmental concerns," along with "administrative costs," and the "impact on governmental operations systemwide." **Ziglar** at 134, 136. As this Court has further clarified, these special factors might encompass, among other considerations, the burdens on both the government and its employees, as well as whether Congress has previously enacted legislation in the area, indicating that the judiciary should refrain from interfering. **Milliron** at *6 (citing **Ziglar** at 132–43).  The Supreme Court has furthermore expressly stated that "[u]nsurprisingly, Congress is 'far more competent than the Judiciary' to weigh such policy considerations.  And the Judiciary's authority to do so at all is, at best, uncertain." **Egbert** at 491 (internal citations omitted).  This Court has furthermore recognized that the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government, are particularly high in the prison setting:

> The burdens on the government, the prison administration, and on the individual employees, who must defend claims often filed without merit and

> simply for harassment, are great. Specifically, being named in a frivolous lawsuit subjecting the employee to personal liability may cause financial problems for defendants and their families who then face difficulties refinancing or taking out home loans or other credit due to being involved in a pending legal matter.

*Crisantos v. Sims*, 2023 WL 3115686, at *6, (N.D. W. Va. Feb. 27, 2023). Additionally, the harmful effect that the creation of a *Bivens* remedy could have on the discharge of official duties must be taken into account, as officials "who face personal liability for damages might refrain from taking urgent and lawful action in a time of crisis." **Id**. (*quoting* *Ziglar* at 145). Evaluating these impacts "to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government" is a responsibility best left for Congress and not the judiciary. *Id*. at 134. These concerns, furthermore, are especially significant with respect to retaliation claims. Certainly, expanding *Bivens* to allow First Amendment retaliation claims by prisoners would result in an increased number of such suits, in addition to the increase in the systemwide costs and impacts enumerated above. The Supreme Court has also recognized that "a plaintiff can turn practically any adverse action into grounds for a retaliation claim," thereby adding to the substantial social costs already associated with recognizing new *Bivens* claims. *Egbert* at 499. Likewise, to the extent the plaintiff may be claiming that any particular disciplinary action, or his transfer to another housing unit, was retaliatory, the Fourth Circuit has long cautioned that such claims "intersect with the statutory scheme delegating authority" to the Bureau of Prisons over, among other areas, housing decisions and discipline, and that extending *Bivens* to

retaliation claims in such instances could "lead to an intolerable level of judicial intrusion into an issue best left to corrections experts." **Mays** at 205, quoting **Earle v. Shreves** at 780–81.

Finally, legislative action which suggests that Congress "does not want a damages remedy, is itself a factor counseling hesitation." **Ziglar** at 148; see also **Egbert** at 493. Particularly in the prison context, the Fourth Circuit has observed that "Congress' decision not to include an individual capacity damages remedy in the Prison Litigation Reform Act 'speaks volumes and counsels strongly against judicial usurpation of the legislative function.'" **Nellson** at *5 (citing **Bulger** at 141). Accordingly, because Congress has expressed a desire to prevent courts from interfering with BOP decisions and has been "conspicuously silent about creating a remedy for prisoners to obtain damages from individual officers, 'the existence of the ARP and PLRA counsel hesitation in extending Bivens to Appellant's claims.'" **Bulger** at 141. This Court has also previously recognized that "Congress's inaction and failure to provide a damage remedy, particularly where it has acted to enact sweeping reforms of prisoner litigation, suggest that an extension of a damages remedy for other types of mistreatment should not be judicially created." **Milliron** at *7 (citing **Ziglar** at 148).

Based on the foregoing, the undersigned finds that there are several special factors counselling hesitation in this case, and that accordingly, no **Bivens** remedy exists for the plaintiff's retaliation claims herein.

Finally, the undersigned notes that plaintiff has filed a letter [Doc. 15], in which he complains that the BOP is mishandling deductions for his filing fee. Plaintiff is apparently under the mistaken impression that this Court's order granting in forma pauperis status

prohibits the BOP from deducting multiple encumbrances in one month. A review of the attached correspondence and leger sheet confirms the BOP is complying with this Court's order, and plaintiff's motion is without merit.

## V. Recommendation

For the reasons set forth above, the undersigned recommends that the plaintiff's case be **DISMISSED WITH PREJUDICE** for failure to state a claim. It is further recommended that his pending Motion for Miscellaneous Relief [**Doc. 15** ] be **DENIED.**

The petitioner shall have **fourteen days** from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is **DIRECTED** to terminate the Magistrate Judge's association with this case.

The Clerk of the Court is further **DIRECTED** to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

**DATED**: November 20, 2024

*/s/ James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE